2643 Peddy v. L'Oreal USA, Inc. Good morning, Your Honor. May it please the Court, Stephen Bergstein for the Plaintiff's Appellant. The jury may find that the defendant failed to rehire the plaintiff because of her age. After the plaintiff's job was eliminated, she applied for seven positions in particular, and she was denied those positions in favor of younger, less qualified candidates, many of whom did not have the minimum qualifications for the positions in question, and the plaintiff was not even interviewed for these positions. And that process was the culmination of a pattern from the previous year when the defendant made minimal efforts to redeploy the plaintiff when her position was eliminated following the reduction in force, even though, number one, defendant had a policy that endeavored to relocate employees who lost their jobs due to restructuring, and the evidence shows defendants had flexibility in doing so, in moving employees around. And in practice, the evidence shows that defendant redeployed younger employees, but not the plaintiff. And so the redeployment evidence places in context defendant's failure to rehire the plaintiff following the termination, and in our brief, we highlight those seven positions, and for each position, the plaintiff, with her 18 years' experience handling this type of work, was denied those jobs, and instead those positions went to much younger employees, men and women in their 20s and 30s, the plaintiff was 47, and not only did they not have the qualifications for the job, but defendants' justifications for choosing younger candidates were pretty general. First, they couldn't recall why the plaintiff was not even interviewed for the position, and they gave vague generalities as to why other employees were chosen, and the district court summarizes those vague generalities in the special appendix at pages 15 and 17. And, you know, just to give some examples of these positions that went to younger employees, most of these were director of marketing positions. This is Judge Park. Before you do that, can I ask you just to explain what the strongest evidence you have suggesting that age was a but-for cause for the client's failure to be redeployed? Is it just that she was replaced by younger employees, or is there more? Well, there's two acts. It is redeployment and failure to hire post-determination. So on redeployment, the record shows that younger employees were consistently redeployed if they requested it, and there was great flexibility. The plaintiff was not redeployed. She did identify open positions in an email at page 785, 786, and her supervisor said that the plaintiff was not the right fit for that job, but she couldn't recall any details. And so, again, we're talking younger people here are consistently benefiting from this practice. The plaintiff is older. She's 47, which may not seem old for most of us, but I guess in this work world, that's considered old. So when we're talking about the failure to rehire, the seven positions I'm talking about, they're all younger employees. The plaintiff was there for about 12 years. She was there a long time. She had good performance reviews. Why are they going out of their way not to bring her back when she expresses a desire to come back? She has the qualifications. And in the positions that we're highlighting on appeal, they all went to younger people. One position, one director of marketing position, goes to a woman by the name of Jenny Morell, a candidate needed eight to ten years of brand management experience. This is the director of marketing for Redken, R-E-D-K-E-N. And Morell had only five years' experience, including a summer internship, and never managed direct reports, which is something that, with the qualifications, you develop manager-level talent. Plaintiff had done those things, but plaintiff was older. There was a position, a director of marketing for L'Oreal Professional. They went with a young man who had no experience in the beauty industry. He worked in the alcohol industry. And the decision-makers couldn't remember why plaintiff wasn't even interviewed for this position, and this selectee, Steve Doan, had no beauty consumer goods experience at all. So I guess my point is that, you know, in these age discrimination cases where you don't have direct evidence and you really don't see direct evidence in these cases anymore, when you're looking at circumstantial evidence, you look at the totality, and the question becomes why did there appear to be a concerted effort not to bring the plaintiff back? She was a good worker. We're getting into issues of intent, you know, and once we get into issues of whether there's intent to discriminate or whether that intent points in another direction, that's really a question for the jury. And, you know, it's very easy for management to say, well, you know, to give a subjective justification why somebody wasn't hired, and we see that in this case in particular. But, you know, the pretext is really in the evidence that they didn't hire somebody who appeared to be highly qualified and somebody on numerous occasions who didn't have the qualifications but chosen instead. So this is a classic jury question for trial about defendants' motivation not to bring the plaintiff back. And, you know, that's really it. The case does not raise any unique issues of law. We're not asking for, you know, a novel interpretation of the Age Discrimination and Employment Act. This is a classic totality of the circumstances case where this really ought to be resolved by a jury. Excuse me. You have one minute left. Okay. If the court has no further questions, I can sit down and address any issues in the rebuttal. Thank you, Mr. Erickson. You've reserved three minutes for rebuttal. We'll hear next from the FOE, Mr. Savage. Good morning, Your Honors, and if it pleases the court, Erick Savage, and somewhere on the telephone line, my colleague Emma Diamond for the appellee. Now, back when the plaintiff started this case and she was making a claim for wrongful termination, she said at page 154 of the appendix that anybody who was terminated over the age of 40 is necessarily terminated because she was over 40. What we've seen in this case throughout is plaintiffs see everything through the eyes of her age, but the problem is that she has no proof of age playing any role in the decision. I just want to correct two things that counsel said. A plaintiff was not with L'Oreal for 12 years. She was there for two years. She was not, as I believe it was Judge Clark suggested, she was not replaced. The assistant vice president position that she held was, in fact, eliminated and not refilled. The plaintiff or appellant, I should say, continually refers to this policy or rule that she claims L'Oreal had and was going to redeploy people who wound up, unfortunately, being let go as a result of reorganization. That's a total misrepresentation of the record. The only document on which plaintiff relies to make that assertion is the document which says we aim to redeploy, where possible, employees who are let go through a reorganization. It's not a we commit, a we promise or anything of that nature. And what we have here is the issue of redeployment. Not only did her HR representative, Farida Mercedes, make an effort to try to help the plaintiff to find a new job after she had been let go. She even persuaded the company to break its own rule under which normally internal candidates were allowed to apply for only one job at a time. Mercedes got the company to agree to let Ms. Petty apply for several positions at one time while she was still employed. That's certainly not redolent of any mistreatment, let alone age-based discrimination. What we then get to is. This is Jody Barrett. Yes, Judge. It sounds like the company's policy is, seems to be to avoid redeploying employees to lower level positions where possible. And at least that seems to be what Ms. Petty is alleging. And I guess the question there, then, is, you know, doesn't that mean that more senior employees are going to have fewer options for redeployment because they'll typically have more experience and be overqualified? Not necessarily, Judge. It just means that the company has a policy and it's a legitimate policy. There's nothing legally requiring it to be written that says that people who have been let go from a particular position will not be rehired into lower level positions. And what you have here are the approximately 30 positions from which Ms. Petty applied following January of 2018. She was almost universally applying for positions either as a manager, which is one level below where she was, or she was applying for a director position, which was two levels below where she was. In some cases, she applied for promotions and the company was not going to do that because it didn't deem her promotable when she was there. It certainly wasn't going to rehire her into a higher position. And as we've seen, as we saw, and we made very extensive demonstrations to the court below identifying every job for which she applied. Her skills, unfortunately, did not match the needs of the company. These jobs for which she applied are not fungible or interchangeable. These are jobs requiring specific skills or experience. So you have somebody, they needed somebody who was going to be a director, again, two positions below assistant vice president, who had experience and knowledge of the African-American market. There were needs for people with social media experience, for e-commerce, for very extensive fragrance experience, all these other reasons. Judge Walker, you kind of shifted gears on us. A minute ago, you were just talking about a general policy not to rehire into lower level positions. And now you're giving reasons why in this particular case, she wouldn't be suitable for these lower level positions. Are both in play? Is just one in play? I can understand a policy not to rehire people in lower level positions because the people below those lower level positions are aspiring to get into those positions. And you want to keep those positions available for developing younger people. But here, should we really pay much attention to that policy when, in fact, your defense is that she wasn't qualified even for the lower level position? Well, Your Honor, admittedly, it is a bit of a hybrid for one thing, and it's uncontested that the overall overwhelming history of the company that it does not hire people back into lower level positions, which would have rendered her unqualified. What appellant has been saying is, well, first of all, we don't believe that that policy exists anyway, notwithstanding the fact that it's uncontested. And then they're saying, well, she should have been hired into these jobs. And she criticizes the company for not having interviewed her for those positions when, in fact, the talent acquisition group considered her along with literally dozens, if not hundreds of other people for those same positions and came to the conclusion that it had better qualified people who fit into those roles. And certainly part of it that was a disqualifier for appellant was the fact that she was seeking to come in in a lower role. And again, what is missing in all of this is any proof that this had anything to do with Ms. Petty's age. There was absolutely no evidence that anybody from the talent acquisition group knew her age, saw her, had access to her personnel records as part of the review process. And the fact that Ms. Petty, in response to our Rule 56 statement, said, I don't know if that's the case, that's not good enough on summary judgment. This is the time for her to lay bare her proofs and to explain how she is going to convince a jury or how a jury would have to be should be convinced that it had that age was the buts for reasons that she wasn't hired and simply saying, well, gee, I don't know. That's the kind of speculation that that Rule 56 jurisprudence does not does not allow. And as we've noted, the company did attempt to to find her a position. Mercedes did attempt to assist her. Council also criticizes the TA, the talent acquisition group, for not remembering why she wasn't interviewed. And as we pointed out, she applied for approximately 30 jobs at the time that she was leaving the company. There were 90 open positions based on the email that Mercedes sent to her in the subsequent two plus years since then. And between that time and when the talent acquisition people were deposed, there were literally hundreds of jobs that were that were opened up. dozens, if not hundreds of applicants to suggest somehow that the talent acquisition personnel would remember the applications of one person out of literally thousands of resumes that they reviewed in a person who did not make it to the interview stage is, I think, unsustainable. These are these are people who review innumerable applications. And so it's not surprising that two and a half, three years later, they didn't specifically remember a talent application. So going back to Judge Walker, to your question, there is a combination of reasons why she was not rehired following her following the termination in the end of 2017. Excuse me, you have one minute left. I think I've said what I need to say, but I'm happy to answer any of your questions. Thank you, counsel. Mr. Bergstein, you have three minutes for rebuttal. Yes, there's four points I want to make. There's two arguments here relating to company policies, one having to do with redeployment, one having to do with lower level positions when you're rehired. The redeployment policy, the company's ideal is that we promote within. That's what Mercedes, assistant vice president of HR, said. That is pretty clear guidelines about what to do when employees lose their positions through a rip. And that's how they proceeded with younger employees. If they endeavor to do this and they don't comply with their policies, that's evidence of pretext. This court has said that many times, including Stern versus Columbia College. The other issue involving policy is defendants claim we don't hire people into lower level positions. The only quote unquote evidence of that is deposition testimony from an interested witness. We're not required to credit such testimony on the Reeves versus Sanderson when you have an interested witness. And in fact, they have two examples of employees who were rehired in lower level positions. And they were not brief involving employees by the name of Michelle Ryan and Kim Donahue. So they did hire employees into lower level positions. The argument that plaintiff skill sets plaintiff skills did not meet the needs of the company. Again, you know, we identified seven positions where she had 18 years experience hiring people who didn't even have the minimum qualifications. They're all younger. The question is, what's going on here? That's the question. You know, she wasn't qualified for lower level positions. She was doing this kind of work for years. We just heard an argument that management did not know what decision makers didn't know the plaintiff's age when they're reviewing the application. We have evidence in the brief that they did know her age was on multiple HR documents. When they had profile pictures of their employees with their education and employment dates, HR created the RIP documents. Given it, they gave it to Petty. It mentioned her age. They knew how old she was. We heard an argument that witnesses can't be expected to remember why the plaintiff wasn't interviewed for all these positions because they had all these decisions to make. You know, now we're getting into issues of credibility here. You know, you know, EEOC charges are filed relatively quickly after somebody leaves their position to ensure that you can record these events and that the memories are still fresh. You know, if you want to argue that you don't know why somebody with these qualifications was not interviewed for a position because, you know, time prevents them from remembering, that's an issue for the jury. That's a credibility question. These are questions which cannot be resolved on an issue for summary judgment. So in conclusion, this looks to me like a classic case of whether there was discriminatory intent. And I would point out that the district court noted that the initial RIP involved all employees over the age of 40. That's not a claim for relief in this case, but it's further background evidence that something is going on at L'Oreal during this period of time to stay with younger employees, even if they're not particularly qualified for their positions. Thank you. Thank you both. We'll take it under advisement. And the remaining two cases on the calendar for today are on submission. So with that, I'll ask the courtroom deputy to adjourn. Court is adjourned.